IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
PINE BLUFF DIVISION

IN RE: FLORA MAE BATEMAN, Debtor          CASE NO.: 5:04-bk-10772
                                                                           CHAPTER 13

FLORA MAE BATEMAN                          PLAINTIFF/DEBTOR

v.                   AP NO.: 5:09-ap-01244

SOUTHERN DEVELOPMENT CORPORATION                      DEFENDANT

## MEMORANDUM OPINION AND ORDER

Before the court is a complaint ("Complaint") wherein the debtor, Flora Mae Bateman ("debtor"),[1] objects to the proof of claim filed by Southern Development Corporation ("SDC"). The proof of claim relates to indebtedness incurred when the debtor and her now deceased husband acquired a residence in Jefferson County, Arkansas. The matter was tried on July 19, 2010. The parties had an opportunity to submit post-trial briefs. Thereafter, the court took this matter under advisement. For the reasons stated herein, the Complaint is granted in part and denied in part. A separate judgment consistent with the findings and conclusions stated herein will be entered after the court considers the issue of costs.

### I. Jurisdiction

The court has jurisdiction over this matter under 28 U.S.C. §§ 1334 and 157. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), (E), (K), and (O). The following opinion constitutes findings of fact and conclusions of law in accordance with Federal Rule of

---

[1] The debtor spells her last name with an "o" (Batemon). Her name appears as such on transactional documents, and she spelled it that way when testifying. The pleadings, however, use an "a" (Bateman). Accordingly, the latter spelling is used in this opinion.

Bankruptcy Procedure 7052.

## II.  Facts

In January of 1987, the debtor and her now deceased husband, James Bateman, purchased a home in the city of Pine Bluff, Jefferson County, Arkansas.  A closing statement ("Settlement Statement") dated January 27, 1987, reflects the sellers as James Michael Hood and Peggy Lou Hood.  James Michael Hood, also known as Jim Hood, currently works for SDC and testified at trial.

The Batemans made a down payment of $15,000 against a purchase price of $34,500.  The Settlement Statement reflects that the Batemans would execute a note for the $19,500 balance to SDC at nine percent per annum (later reduced to eight percent), payable at $156.91 per month.[2]

As required by the Settlement Statement, the Batemans executed their January 28, 1987 Promissory Note[3] in the principal amount of $19,500 to SDC, bearing nine percent per annum interest payable at $156.91 per month.  The Promissory Note does not contain a late penalty provision.  The Promissory Note states that it is secured by a Deed of Trust.

The Batemans executed a Deed of Trust on the Jefferson County property dated and notarized on January 27, 1987.  The Deed of Trust names Jim Hood as the trustee and SDC as the beneficiary.  In pertinent part, the Deed of Trust provides for a late charge "not exceeding

---

[2]The Settlement Statement references a twenty-four month note payable at $56.50 per month, which is not at issue in this proceeding.

[3]The Promissory Note is unclear as to the exact date.  It appears to be January 28, 1987, though SDC's Accountant's Review Report references January 26, 1987.  The SDC proof of claim states that the debt was incurred on January 27, 1987.

four per centum (4%) of any installment when paid more than fifteen (15) days after the due date thereof . . . ."

Although the Settlement Statement provides for a "Recording Fees" charge of $12, no deed or deed of trust was filed on or near the January 27, 1987 closing date. Specifically, the debtor testified that she and her husband left the closing with a limited number of documents, none of which was a recorded warranty deed. The debtor stated that Mr. Hood, Jim Hood's father (now deceased), had indicated that he would keep the originals in his safe. The court, accordingly, questioned whether the debtor had ever seen a recorded warranty deed conveying title to the debtor and her husband. Subsequently, the court made the same inquiry of both Jim Hood and his mother, Avis Hood, both of whom work for and testified on behalf of SDC. The testimony of SDC's witnesses on this point was unclear and equivocal. They could not affirmatively state that the deed had been recorded.

All the debtor could offer on this point was that her husband had become concerned a couple of years after closing and said that he was going to visit with Mr. Hood to get the deed recorded. The debtor indicated, however, that the only document that might have been actually recorded as a result of her husband's conversation with Mr. Hood was the Deed of Trust, not the actual warranty deed. The Deed of Trust reflects that it was not recorded in Jefferson County until November 5, 1990, nearly four years after closing.

In response to the court's inquiry, counsel for the debtor produced a copy of a warranty deed conveying title to the Batemans, but that copy did not reflect that it had been recorded in the Jefferson County real estate records. Neither party introduced this copy into the record nor could any witness unequivocally vouch for the existence or location of the original. The court

3

concludes that a warranty deed exists conveying title to the Batemans, but the record is unclear as to whether it was ever recorded in the real estate records of Jefferson County, Arkansas.[4]

The debtor filed her individual Chapter 13 on January 22, 2004. On September 28, 2009, the debtor filed her Complaint against SDC, principally contesting the manner in which SDC accrued and accounted for late charges and the application of prepetition and postpetition payments.

The parties concur that SDC improperly calculated the Batemans' indebtedness over the still extant life of the loan. SDC filed an answer on January 27, 2010, admitting that overpayments had been made and acknowledging that the debtor was entitled to a credit in the amount of $4,687.78. Succinctly, it appears that SDC compounded interest on late charges as a daily rate calculation based on four percent, rather than simply charging four percent of the past due installment.[5] Additionally, duplicate payments by the chapter 13 trustee's office complicated matters. The debtor also questioned the application of payments and whether SDC improperly added accrued interest to the outstanding principal.

At trial, SDC did not dispute either the incorrectness of its interest calculations or the final credit amount suggested by the debtor's expert. The debtor's initial calculation of $4,378.14 (Ex. K) was actually less than the concession made in SDC's answer. The debtor's claim only increased by virtue of a revised analysis prepared by the debtor's expert shortly

---

[4] On July 30, 2010, the parties filed a joint motion to supplement the trial record ("Motion") to submit evidence regarding the warranty deed. The court hereby denies the Motion. The sellers are not before the court, and the parties did not dispute title.

[5] The evidence presented at trial was that SDC reduced the default charge from four percent to two percent at some point during the life of the loan.

before trial. The debtor's revised analysis increased the total overpayment figure to $5,415.83. At trial, counsel for SDC indicated a willingness to credit the full $5,415.83 amount to the debtor's principal balance.

Of that $5,415.83 overpayment, $1,182 represents duplicate payments, which are not the fault of SDC. (Ex. N.) Specifically, the debtor made six postpetition payments under the assumption that she had no arrearages. Subsequently, when the debtor amended her plan to bring the mortgage payments inside the plan, the chapter 13 trustee unilaterally applied funds on hand to the same six postpetition payments. Accordingly, when the duplication is subtracted, the actual overpayment figure occasioned solely by SDC's actions is $4,233.83.

At trial, SDC agreed to the debtor's overpayment calculations. Unfortunately, the debtor omitted introducing any evidence of the current outstanding balance at a date certain from which the court could apply the credit to arrive at a proper claim amount. Avis Hood testified that approximately $4,100 in principal was owed after making an offset,[6] though it is not clear if she was using her figures or the $5,415.83 figure, and the record does not reflect a commensurate date. The debtor's expert concluded his analysis in July 2009, approximately a year prior to trial. The debtor did not introduce evidence concerning payments in the interim or the current principal balance.

SDC's proof of claim is incorrect. In its answer and at trial, SDC acknowledged the miscalculations. Appended to SDC's answer is an Accountant's Review Report ("Report"). The Report forms the basis for SDC's suggested credit of $4,687.78. SDC's accountant asserts that

---

[6]Avis Hood estimated approximately $8,800 as the principal owed before applying any credit to the debtor's balance. The record lacks an exact figure as of a date certain close enough to trial to account for all postpetition payments made.

5

the total principal balance as of July 13, 2009 (a year before trial) should be $5,004.23, consisting of $2,529.95 subject to interest and $2,474.28 not subject to interest. The accountant apparently deducted $5,004.23 from $9,692.01 to arrive at the overpayment amount of $4,687.78.

Also, the arrearage figure of $6,138 is overstated. SDC did not dispute the expert's report that reflected that the arrearage amount was overstated by $3,699.83. The debtor's expert took this figure into consideration and included it in the $5,415.83 credit referenced above. SDC's treasurer, Avis Hood, signed the proof of claim but was unable to explain how she arrived at the $6,138 arrearage figure.

The debtor filed her Chapter 13 petition on January 22, 2004. The "Corrected Combined Balance" prepared by SDC's accountant was $17,973.73 as of December 31, 2003, consisting of $15,573.04 subject to interest and $2,400.69 not subject to interest. These figures change only incrementally to the next entry dated February 5, 2004, which reflects a corrected combined balance of $17,933.62 with $15,532.93 subject to interest and $2,400.69 not subject to interest.

SDC filed its proof of claim on February 5, 2004, asserting a secured claim of $20,597.65, inclusive of $6,138 in arrearages with $14,459.65 as the non-arrearage pay off. These figures are not supported by the accountant's later reconciliation.

Four days prior to her January 22, 2004 filing, Avis Hood, on Hood & Company stationery, reported to the debtor yet another figure, stating that the "balance on your note with interest to date [January 18, 2004] is $18,422.83." This figure cannot be reconciled with SDC's proof of claim or its accountant's revised and corrected figures.

### III.  Analysis

The Complaint asserts five causes of action: violation of the automatic stay; turnover of property; Arkansas Deceptive Trade Practices Act; breach of contract; and objection to claim. Pursuant to 11 U.S.C. § 502(b) and Federal Rule of Bankruptcy Procedure 3007, relief is granted as to the objection to claim cause of action based upon breach of contract.  The remaining counts are denied.

### A.  Violation of the Automatic Stay

SDC concedes that its proof of claim is incorrect as a result of historical miscalculations of interest and misapplications of payments.  The debtor asserts that the retention of the overstated late fees constitutes an act of control over property of the estate in violation of the automatic stay.  The debtor seeks actual damages, attorney's fees, and punitive damages pursuant to 11 U.S.C. § 362(k).  These allegations fail legally and factually.

"[T]he filing of a bankruptcy petition operates as a stay of all actions to, among other things: collect a claim against the debtor that arose prepetition; enforce a prepetition judgment against the debtor or property of the estate; take acts to obtain possession of property of [the] estate or to exercise control over property of the estate." *James v. Planters Bank* (*In re James*), 257 B.R. 673, 677 (B.A.P. 8th Cir. 2001); *see* 11 U.S.C. § 362(a)(1)–(3).  The debtor claims SDC violated the automatic stay provisions of 11 U.S.C. § 362(a)(3).

Section 362(a)(3) provides as follows:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, . . . , operates as a stay, applicable to all entities, of–
  (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

Further, the debtor seeks actual damages, attorney's fees, and punitive damages for a willful stay violation pursuant to 11 U.S.C. § 362(k).

Section 362(k)(1) provides as follows:

Except as provided in paragraph (2), an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.

"A willful violation of the automatic stay occurs when the creditor acts deliberately with knowledge of the bankruptcy petition." *Hampton v. Yam's Choice Plus Autos, Inc.* (*In re Hampton*), 319 B.R. 163, 171 (Bankr. E.D. Ark. 2005) (citing *Knaus v. Concordia Lumber Co.* (*In re Knaus*), 889 F.2d 773, 775 (8th Cir. 1989)). "A willful violation does not require a specific intent to violate the automatic stay." *Fleet Mortgage Group, Inc. v. Kaneb* (*In re Kaneb*), 196 F.3d 265, 269 (1st Cir. 1999). "[I]f there is knowledge of the stay and the defendant intended the actions which constituted the violation" the standard is met. *Id*. "The party seeking damages for a [willful] stay violation must establish that: '(1) a violation occurred; (2) the violation was committed willfully, [and] (3) the violation caused actual damages.'" *Hampton*, 319 B.R. at 170 (citing *Rosengren v. GMAC Mortgage Corp.*, No. CIV. 00-971 (DSD/JMM), 2001 WL 1149478, at *2 (D. Minn. Aug. 7, 2001)). "Emotional distress damages for automatic stay violations are available if the individual debtor puts on clear evidence establishing that significant harm occurred as a result of the violation." *L'Heureux v. Homecomings Fin. Network, Inc.* (*In re L'Heaureux*), 322 B.R. 407, 411 (B.A.P. 8th Cir. 2005) (citing *Dawson v. Washington Mut. Bank* (*In re Dawson*), 390 F.3d 1139, 1148-49 (9th Cir. 2004); *Jackson v. Dan Holiday Furniture, LLC* (*In re Jackson*), 309 B.R. 33 (Bankr. W.D. Mo. 2004)). A claim for willful violation of the automatic stay must be accompanied by appropriate circumstances.

"Appropriate circumstances" are defined as "egregious, intentional misconduct on the violator's part." *Williams v. Gen. Motors Acceptance Corp.* (*In re Williams*), 316 B.R. 534, 543 (Bankr. E.D. Ark. 2004) (citing *United States v. Ketelsen* (*In re Ketelsen*), 880 F.2d 990, 993 (8th Cir. 1989)).

The debtor presented no evidence that SDC violated the automatic stay. The evidence is that SDC, having been notified of the bankruptcy, filed a proof of claim that it considered appropriate and consistent with its contractual agreement with the debtor. Thereafter, the debtor proposed and confirmed a plan of reorganization. The parties proceeded consistent with that plan for a number of years prior to the debtor filing her objection to SDC's claim. As the evidence demonstrates, the proof of claim is incorrect. The debtor, accordingly, sought and availed herself of the appropriate remedy–namely an award of damages–through this adversary proceeding. This proceeding is a legitimate argument over math. The debtor, at any time after the filing of SDC's proof of claim, could have lodged her complaint or objection and brought this dispute to an immediate resolution without any imputation of an ongoing effort to violate the stay. The fact that the debtor objected to SDC's claim years later is a credit to her persistence; however, it is not a basis for asserting that SDC's continued receipt of payments under the plan and application of those payments to her debt is somehow an effort to control her property either expressly or within the generally understood meaning of the automatic stay and violations thereof.

The evidence does not support an assertion that SDC intended to violate the automatic stay or did anything other than collect a debt that it thought was owed. As no evidence supports a violation of the automatic stay, SDC could not have engaged in willful conduct in relation to

the automatic stay.  Additionally, were the court to assume arguendo that such evidence existed, the debtor failed to prove any damages other than the actual damages suffered for breach of contract, which amount is awarded herein.  The debtor expressed frustration in dealing with SDC through the years, especially in attempting to clarify the indebtedness owed, but she never quantified any damages other than the offset figure discussed and awarded herein.  Further, were the court to find that a violation of the stay occurred, insufficient evidence exists to find or infer willful or malicious acts sufficient to impose punitive damages.  The relief requested in this count is denied.

### B.  Turnover of Property

The debtor seeks turnover of "all funds collected from her bankruptcy estate through the Trustee resulting from [SDC's] misrepresentations and false statements on its proof of claim."[7] (Compl. ¶58.)  The debtor considers the overpayments to be property of the estate and, thus, subject to turnover.

"The turnover requirement is an affirmative duty that arises upon the filing of the bankruptcy petition."  542 COLLIER ON BANKRUPTCY § 542.02 (rev. 15th ed. 2009).

Section 542(a) provides as follows:

(a) Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or value of such property, unless such property is of inconsequential value or benefit to the estate.

"[T]he drafters of § 542(a) made it clear that the turnover obligation applies to property of the

---

[7]The Complaint does not contain a count or cause of action for fraud or misrepresentation.

estate" by specifically referencing to § 363.  *Brown v. Pyatt* (*In re Pyatt*), 486 F.3d 423, 427 (8th Cir. 2007).  "Property of the estate is defined by 11 U.S.C. § 541(a)(1) as 'all legal and equitable interests of the debtor in property as of the commencement of the case.'"  *Id*.  There is "an obligation on any entity other than a custodian who comes into 'possession, custody or control' of property of the estate after the bankruptcy petition is filed to deliver the property to the trustee."  *Id*. at 428.  "[T]he duty [of turnover] arises upon the filing of the bankruptcy petition.  The failure to fulfill this duty, regardless of whether the original seizure was lawful, constitutes a prohibited attempt to 'exercise control over the property of the estate' in violation of the automatic stay."  *Knaus*, 889 F.2d at 775.

Turnover is not an appropriate remedy in this instance.  Specifically, the claim or cause of action that the debtor had prepetition and postpetition against SDC is indeed property of the estate under section 541 as a legal or equitable interest of the debtor.  Here, the debtor pursued the claim to judgment.  Although now liquidated, it is still a claim until paid.[8]  When paid, the money received becomes property of the estate pursuant to 11 U.S.C. § 1306.  The right to receive money and the money, when received, are property of the estate.  There is no specific corpus of money that is property of the estate outside those two eventualities.  Additionally and significantly, the judgment herein will be in the form of an offset against a still existing balance, rather than money paid directly to the debtor.  The relief requested in this count is denied.

---

[8] 11 U.S.C. § 101(5) defines a "claim."

11

### C. Arkansas Deceptive Trade Practices Act

The debtor also asserts a claim based upon the Arkansas Deceptive Trade Practices Act. She did not meet her burden of proof under this count.

"The Arkansas Deceptive Trade Practices Act ("the ADTPA") focuses on consumer protection in connection with trade practices." *Independence County v. Pfizer, Inc.*, 534 F.Supp.2d 882, 886 (E.D. Ark. 2008) (citing ARK. CODE ANN. §§ 4-88-101 to 4-88-503 (2010)). "Both the preamble to the ADTPA and the activities that Act makes unlawful show that the ADTPA protects consumers from unfair ways of doing business." *Id*. at 887. Causes of action brought under the ADTPA by private parties are limited because "the responsibility for civil enforcement of the ADTPA rests largely with the Attorney General." *Wallis v. Ford Motor Co.*, 208 S.W.3d 153, 161 (Ark. 2005) (citing ARK. CODE ANN. § 4-88-113(a)-(e) (2010)). "[T]o protect consumers, the Attorney General has been given the power to bring actions to recover any 'ascertainable loss' sustained by purchasers." *Id*. There is, however, one provision of the ADTPA that allows for private causes of action.

Section 4-88-113(f) of the ADTPA provides as follows:

(f) Any person who suffers actual damage or injury as a result of an offense or violation as defined in this chapter has a cause of action to recover actual damages, if appropriate, and reasonable attorney's fees.

Based on the preceding statutory provision, "a private cause of action is afforded to any person who suffers actual damage or injury." *Wallis*, 208 S.W.3d at 161.

The debtor alleges SDC violated Arkansas Code Annotated §§ 4-88-107(a)(8) and 4-88-107(a)(10). Section 4-88-107(a)(8) of the ADTPA provides as follows:

> (a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:
> > (8) Knowingly taking advantage of a consumer who is reasonably unable to protect his or her interest because of:
> > > (A) Physical infirmity;
> > > (B) Ignorance;
> > > (C) Illiteracy;
> > > (D) Inability to understand the language of the agreement; or
> > > (E) A similar factor[.]

The debtor did not meet her burden of proof under this section. Specifically, no question exists that SDC breached its contract with the debtor and her now deceased husband. The debtor did not, however, introduce sufficient evidence to prove that, were the court to find or even assume arguendo that she had been taken advantage of, the debtor was unable to protect her interests because of any of the five enumerated bases. The debtor is not physically infirm. She is articulate and educated, literate, and appears capable of understanding the language of the agreement in question. The evidence did not adequately demonstrate any other "similar factor" that would warrant protected status under the ADTPA.

The debtor also seeks damages under section 4-88-107(a)(10) of the ADTPA, which provides as follows:

> (a) Deceptive and unconscionable trade practices made unlawful and prohibited by this chapter include, but are not limited to, the following:
> > (10) Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade[.]

"The Arkansas Supreme Court defined an unconscionable act as 'an act that affronts the sense of justice, decency, or reasonableness' including acts that violate public policy or a statute." *Pfizer, Inc.*, 534 F.Supp.2d at 886 (E.D. Ark. 2008) (citing *Baptist Health v. Murphy*, 226 S.W.3d 800, 811 (Ark. 2006)).

13

Again, the debtor failed to meet her burden of proof under this section. The debtor was clearly damaged by a breach of contract. Compounding interest and poor bookkeeping are clearly compensable, but the testimony in this matter does not rise to the level of an affront to a sense of justice or decency sufficient to demonstrate an unconscionable act or practice on SDC's part. SDC did not act in a false or deceptive manner. SDC through its agents and employees did not engage in any unconscionable, false, or deceptive acts toward the debtor. Rather, SDC compounded interest contrary to Arkansas law and misapplied payments on occasion. This information was readily calculable and could have been the subject of a bona fide dispute by the debtor at any time. The debtor was on notice to take action when she obtained payoff figures, reviewed the proof of claim, or proposed a plan of reorganization that paid the questionable debt. When the debtor did file her Complaint, SDC acknowledged its mistakes.

Other than a dispute over math, the debtor could not point to a specific misrepresentation, a fraudulent statement, or a purposeful pattern and practice of deceit. The relief sought under the ADTPA is denied.

### D. Breach of Contract and Objection to Claim

*i. Objection to Claim*

The debtor disputes the correct amount of SDC's proof of claim and, accordingly, combined her objection to claim with this adversary proceeding.

Section 11 U.S.C. § 502(b) provides as follows:

(b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that–
    (1) such claim is unenforceable against the debtor and property of the

>>debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured[.]

Federal Rule of Bankruptcy Procedure 3001(f) states that "[a] proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." "A proof of claim or interest executed and filed in accordance with this subdivision shall supersede any scheduling of that claim or interest pursuant to § 521(a)(1) of the Code." FED. R. BANKR. P. 3003(c)(4). Federal Rule of Bankruptcy Procedure 3007 governs the filing of objections to claims. Specifically, Federal Rule of Bankruptcy Procedure 3007(b) permits the inclusion of an "objection in an adversary proceeding."

"[A] party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *Gran v. Internal Revenue Serv.* (*In re Gran*), 964 F.2d 822, 827 (8th Cir. 1992) (citing *Cal. State Bd. of Equalization v. Official Unsecured Creditors' Committee* (*In re Fid. Holding Co.*), 837 F.2d 696, 698 (5th Cir. 1988)). "The objecting party must then produce evidence rebutting the claimant or else the claimant will prevail." *Id.* If "evidence rebutting the claim is brought forth, then the claimant must produce additional evidence to 'prove the validity of the claim by a preponderance of the evidence.'" *Id.*

The debtor has met her burden of proof by demonstrating that, because of a breach of contract, the claim is in part unenforceable pursuant to 11 U.S.C. § 502(b). The debtor's objection to claim is therefore sustained in part.

### *ii. Breach of Contract*

In its answer, SDC generally denied the breach of contract allegations contained in the Complaint but conceded that overpayments had been made, contested the specific amount, and further acknowledged that the debtor was entitled to a credit in the amount of $4,687.78. As

previously stated, SDC conceded an amount greater than the initial calculation made by the debtor's expert. The debtor's expert recalculated her damages shortly before trial, and SDC, when advised of the new figures, agreed to that amount.

In miscalculating late charges, compounding interest, and misapplying payments, SDC breached the terms of the Promissory Note and Deed of Trust and, accordingly, damaged the debtor in the amount of $5,415.83. This amount, plus any interest accruing after the entry of a judgment, shall represent an offset against the remaining balance owed by the debtor to SDC.

Further, the debtor is entitled to an award of reasonable attorney's fees for breach of contract. ARK. CODE ANN. § 16-22-308 (2010). Attorney's fees may be awarded pursuant to Arkansas Code Annotated § 16-22-308 provided the recovery is primarily for breach of contract claims. *Fowler v. Crossett* (*In re Fowler*), 395 B.R. 647, 650 (Bankr. W.D. Ark. 2008). Several criteria must be taken into consideration when determining reasonable attorney's fees. In *Fowler*, the court "look[ed] to the factors announced by the Arkansas Supreme Court in determining the reasonableness of the requested attorney's fee." 395 B.R. at 651. The following factors should be considered to determine what is a reasonable fee:

1. the experience and ability of the attorney;
2. the time and labor required to perform the service properly;
3. the amount in controversy and the result obtained in the case;
4. the novelty and difficulty of the issues involved;
5. the fee customarily charged for similar services in the local area;
6. whether the fee is fixed or contingent;
7. the time limitations imposed upon the client in the circumstances;
8. the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the attorney.

*Id.* (citing *Phi Kappa Tau Housing Corp. v. Wengert*, 86 S.W.3d 856, 860 (Ark. 2002)). "The party seeking recovery of attorney's fees bears the burden of documenting the hours expended

and hourly rates." *Id*. (citing *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)).

An analysis of the above factors results in an award of a $2,500 attorney's fee plus costs for debtor's counsel. The debtor must provide within fifteen days of the entry of this judgment a statement of her costs, including that of her expert. SDC will then have ten days to contest the debtor's statement. The court will consider the statement and any objection filed and thereafter enter a judgment for the breach of contract damages and fees as provided herein plus reasonable costs and expenses.

The record simply does not support a larger award of attorney's fees. Specifically, this case was not necessarily complicated. It was mostly a question of math. In fact, SDC, in its answer, conceded an amount greater than that initially calculated by the debtor's expert. This case is no more than a simple breach of contract case. The causes of action based on turnover, violation of the stay, and the ADTPA were unfounded legally and factually. Additionally, the only damages proven at trial were for simple breach of contract; no other actual damages, however slight, were proven. Mere statements of distress or inconvenience are insufficient for this court to award damages outside the realm of fixing a punishment based upon willful and malicious acts sufficient to impose punitive damages. The proof at trial simply did not rise to the level of a complex case necessitating a great deal of cost and expense. This was a case of simple and quickly reconcilable math, readily resolvable given the debtor's calculations and the reciprocal and complementary calculations of SDC's accountant.

### IV. Conclusion

The post-trial Motion is denied for the reasons stated herein. The Complaint is sustained as to the objection to claim based on breach of contract. Damages are awarded in the amount of

$5,415.83 plus attorney's fees in the amount of $2,500, to bear interest at the highest rate allowed by law from the date of this opinion until paid. Costs will additionally be awarded based upon a subsequent determination predicated upon a statement submitted within fifteen days of the entry of this Memorandum Opinion and Order. SDC may respond or object to the statement within ten days thereafter. Following a review of the requested costs, the court will enter a final judgment for damages, attorney's fees, and costs.

    IT IS SO ORDERED.

    Dated this 2nd day of September, 2010.

                           RICHARD D. TAYLOR
                           U.S. BANKRUPTCY JUDGE

cc:    Flora Mae Bateman, Debtor
       Joel Hargis, Attorney for the Debtor
       Guy "Randy" Satterfield, Attorney for SDC
       Jack W. Gooding, Standing Chapter 13 Trustee

EOD 9/2/2010
by R Johnson